# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

MICHAEL O.,[1]                              :
  *Plaintiff*,                    :
                                         :
v.                                          :     Civil No. 3:24-CV-00755 (VAB)
                                         :
FRANK J. BISIGNANO,                         :
COMMISSIONER OF SOCIAL                      :
SECURITY,                                   :
  *Defendant*.                    :

## RULING AND ORDER ON PENDING MOTIONS

Michael O. ("Plaintiff") has filed an administrative appeal under 42 U.S.C. §§ 405(g) and

1383(c) against Frank J. Bisignano, the Commissioner of Social Security ("Defendant" or

"Commissioner"), following the denial of Michael O.'s application for disability insurance

benefits ("DIB") and supplemental security income benefits ("SSI").[2]

The Commissioner moves the Court, under sentence four of 42 U.S.C. § 405(g), to enter

judgment reversing and remanding this case to the Commissioner for further proceedings. Def.'s

Mot. for Entry of J. Under Sentence Four of 42 U.S.C. § 405(g) with Reversal and Remand of

the Case to the Def., ECF No. 15; Def.'s Mem. in Supp. of His Mot. for Entry of J. Under

Sentence Four of 42 U.S.C. § 405(g) with Reversal and Remand of the Case to the Def. 1, ECF

---

[1] In opinions issued in cases filed under Section 405(g) of the Social Security Act, 42 U.S.C. § 405(g), this Court will identify and refer to any non-government party solely by first name and last initial in order to protect the privacy interests of Social Security litigants while maintaining public access to judicial records. *See* Standing Order – Social Security Cases, ECF No. 5 (Dec. 19, 2022).

[2] Under the Social Security Act, the "Commissioner of Social Security is directed to make findings of fact, and decisions as to the rights of any individual applying for a payment under [the Act]." 42 U.S.C. § 405(b)(1). The Commissioner's authority to make such findings and decisions is delegated to administrative law judges ("ALJs"). *See* C.F.R. §§ 404.929 *et seq.* Claimants can in turn appeal an ALJ's decision to the Social Security Appeals Council. *See* 20 C.F.R. §§ 404.967 *et seq.* If the appeals council declines review or affirms the ALJ opinion, the claimant may appeal to the United States district court. Section 205(g) of the Social Security Act provides that "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."

No. 15-1 ("Def.'s Mem."). Michael O., in turn, has moved the Court for an order reversing the decision of the Commissioner and remanding for the sole purpose of calculation of benefits. Pl.'s Mem. of Law in Resp. to Def.'s Mot. for Entry of J. under Sentence Four of 42 U.S.C. § 405(g) with Reversal and Remand of the Case to the Def. 3–4, ECF No. 18 ("Pl.'s Mem.").

The issues presented are whether the Administrative Law Judge ("ALJ") properly applied the treating physician rule and thus whether the ALJ's residual functional capacity ("RFC") determination is supported by substantial evidence; and whether Michael O. could perform available jobs if he had been assigned an appropriate RFC.

For the reasons explained below, Michael O.'s motion is **GRANTED**, and the Commissioner's motion is **DENIED**.

The decision of the Commissioner is **VACATED** and **REMANDED** solely for the calculation of benefits.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Background[3]

#### i.    <u>Medical Conditions and Diagnoses</u>

Michael O. has degenerative disc disease of the lumbar spine, anxiety disorder, attention-deficit hyperactivity disorder ("ADHD"), post-traumatic stress disorder ("PTSD"), and major depressive disorder ("MDD"). Administrative Tr. at 1825, ECF No. 11 ("Tr.").

Michael O.'s medical records indicate that he has been diagnosed with degenerative disc disease of the lumbar spine. He reportedly experiences consistent back pain that radiates into his lower extremities. In July 2016, Michael O. underwent a magnetic resonance imaging ("MRI")

---

[3] This section generally summarizes Michael O.'s medical history and conditions, but given the length of the record, it is not exhaustive. The factual background provided here focuses on the aspect of Michael O.'s medical history that underlies the parties' dispute, i.e., the effect of his mental health on his employability, the severity of his back pain, and his ability to engage in sedentary tasks.

examination of his lumbar spine that revealed degenerative changes and an annular fissure. *Id.* at 716. In January 2018, an EMG of his lower extremities returned normal results. *Id.* at 1011. In July 2021, the claimant underwent an MRI that showed no significant progression of degenerative disease. *Id.* at 2553. In June 2023, the claimant underwent another MRI that revealed progression of endplate changes. *Id.* at 3190.

Michael O. has received epidural steroid injections to treat his symptoms. *Id.* at 995. In January 2016, he underwent a lumbar discogram and received a stem cell injection. *Id.* at 689. In November 2016, he underwent L5-S1 and L4-L5 decompression surgery. *Id.* at 861. In November 2018, the claimant underwent lumbar fusion surgery. *Id.* at 1142. The record indicates that his reported symptoms and musculoskeletal functions have varied over numerous examinations. *See id.* at 1829.

Michael O. has also been diagnosed with several mental impairments, namely anxiety disorder, PTSD, ADHD, and MDD. *Id.* at 1829. Michael O. has reported, and some doctors have observed, that the effects of his mental impairments include difficulty with concentration and completing tasks, inability to manage his stress well, reduced memory, reduced insight and judgment, and a tearful, depressed, and anxious mood and affect. *Id.* at 1829–30. Other doctors have observed that Michael O.'s attention, memory and cognition, cooperation, thought process, insight, judgment, and thought content, are normal. *Id.* at 1830.

ii.   Medical Opinions and Assessments[4]

In April 2016, Michael O. was referred to Dr. Michael Robbins, D.O., for an initial examination, at which time Dr. Robbins observed some lower back pain that worsened when Michael O. was sitting. Tr. at 721. When Dr. Robbins saw plaintiff again in August 2016, he

---

[4] There are many medical opinions in the record that are relevant to the parties' briefs. The Court notes the pertinent parts of several.

stated that "[u]nfortunately, [Plaintiff] had very large annular tears[,]" *id.* at 716, advised that Plaintiff "should only consider sedentary employment[,]" *id.*, and opined that he should not lift more than 10 pounds, *id.* at 185. Dr. Robbins later operated on Plaintiff to treat his back pain. *Id.* at 689.

In October 2016, Dr. Barbara Phillips, Michael O.'s treating physician, completed a physical health questionnaire.[5] She indicated that Michael O. was diagnosed with regenerative joint disease of lumbar spine, lumbar foraminal stenosis, and annular tears of discs, as well as generalized anxiety disorder and major depressive disorder. *Id.* at 763. She noted that Michael O. had worsening pain, but that he was "doing better lately." *Id.* In describing his cognitive status, Dr. Phillips noted that it was hard for Plaintiff to concentrate, *id.* at 764, and that his pain impaired his ability to focus long enough to finish simple activities or tasks as well as his ability to change from one simple task to another where physical movement or exertion was involved, *id.* at 766. She also noted that "because of [his] back pain, certain [Activities of Daily Living] take much longer than for [the] average person." *Id.* at 765. Further, he had recently presented as depressed due to his pain. *Id.* at 764.

In October 2017, Dr. Phillips filled out a second questionnaire in which she rated the severity of Michael O.'s back pain as ranging from a three or four to a ten out of ten, generally worsened by movement and relieved by lying on his back. *Id.* at 917. She opined that his reported symptoms are reasonably consistent with his impairments. *Id.* Next, she stated that his pain constantly interferes with the attention and concentration needed to perform simple work tasks, since his "self-management of pain consumes his attention." *Id.* at 918. She estimated that

---

[5] Michael O. first became Dr. Phillip's patient in 2007. She began treating him for anxiety in 2014, and for lower back pain in 2015 following his diagnosis. Tr. at 1049. From 2015 to 2016, Dr. Phillips saw Michael O. monthly. *Id.* Since 2016, Dr. Phillips reports having seen Michael O. approximately every four months for treatment. *Id.* at 763.

Michael O. could not walk more than one city block without rest or severe pain, that he could sit

for up to twenty minutes and stand for up to ten to fifteen minutes, and that he could only sit,

stand, or walk for about two hours each in an eight-hour working day. *Id.* Based on these

limitations, she opined that Michael O. would need a job that permits shifting positions at will

and allows him to take unscheduled breaks. *Id.* She also noted that if he is to sit for prolonged

periods of time, his legs must be elevated at a forty-degree angle for one hundred percent of an

eight-hour workday. *Id.* at 919. She advised that he should only rarely lift less than 10 pounds,

and that he should rarely perform activities including looking up or down, twisting, stooping, or

holding his head in a static position. *Id.* Finally, she estimated that Michael O.'s physical

limitations would likely cause him to be absent from work more than five days each month. *Id.* at

920.

In February 2018, Dr. Phillips completed a third questionnaire in which she confirmed

her previous findings regarding Michael O.'s exertional limitations, the effects of his pain on his

ability to perform work tasks, and his ability to engage in sustained concentration and

persistence. *Id.* at 1049–54. Now, however, she opined that Michael O. could only sit and stand

for one hour each and walk for two hours in an eight-hour workday. In this questionnaire, she

added that Michael O.'s anxiety contributed to the severity of his pain experience, and that his

depression was caused by his chronic pain, but that his mental impairments were not the primary

cause of his physical limitations. *Id.* at 1050.

In October 2022, Dr. Phillips completed a fourth questionnaire in which she listed

Michael O.'s diagnoses as lumbosacral radiculopathy, post-laminectomy syndrome,

intervertebral disc disorder, and lumbar spondylosis. *Id.* at 2970. She once more repeated her

findings that Michael O.'s lower back pain would prevent him from working for a year or more,

and that his pain was worsened by movement. *Id.* at 2970–71. She noted that his pain had improved with an epidural steroid injection administered in June 2022, but that his pain still affected his ability to concentrate in a manner so severe that it would impede more than 25 percent of a typical workday. *Id.* at 2971, 2974.

In September 2021, Dr. James McElhinney, a state agency consultant, completed a disability examination and rated Michael O.'s spinal injury as a "severe," medically determinable impairment. *Id.* at 1972. Dr. McElhinney determined that Michael O. had certain exertional limitations stemming from his pain. He could occasionally lift and/or carry up to 20 pounds and could frequently lift and/or carry up to 10 pounds. *Id.* at 1974. Dr. McElhinney also concluded that Michael O. could stand, walk, or sit for "about 6 hours in an 8 hour workday." *Id.* He found that Michael O.'s physical impairment could reasonably produce his pain, but that his "allegations of total disability [were] not supported by objective evidence in file." *Id.*

In December 2021, state agency consultant Dr. Michael Greenberg conducted a second disability determination examination after Michael O. reported "more severe nerve pain spikes" that allegedly exacerbated his disability. *Id.* at 1980. Dr. Greenberg reached the same conclusions as Dr. McElhinney regarding Plaintiff's exertional limitations and found that Plaintiff's "allegation of worsening [was] not confirmed by medical evidence." *Id.* at 1980, 1982.

In December 2022, Robin Bansal, an Advanced Practice Registered Nurse ("APRN"), conducted a medical examination following a referral from the State of Connecticut's Disability Determination Services. Her medical opinion noted that Michael O.'s gait was "wide-based," that he was "able to stand on [his] heels but [was] unstable while walking," requiring him to hold onto countertops, that his tandem gait was "unstable with eyes open," and that it was "unsafe to test with eyes closed." *Id.* at 3043. She noted that his ability to rise out of a chair was normal,

6

and that he "was able to squat but not all the way down" and with "minimal knee bend." *Id.* She

also stated that "he was able to perform activity but was very slow." *Id.* In assessing Michael

O.'s back pain, APRN Bansal noted that he had "decreased lumbar [range of motion] and pain on

palpation in his lumbar spine. He was unable to perform some special gait maneuvers and had a

positive [straight leg raise]. He used pain avoidance techniques consistent with lower back pain

throughout the entire exam." *Id.*

In February 2017, Michael O. was referred to Charles Vassilopoulos, Ph.D., a

psychologist, for examination of his mental impairments. Dr. Vassilopoulos found that Michael

O. had problems with attention and distractibility and that he had slight memory dysfunction but

could perform simple repetitive commands in a work environment. *Id.* at 804. He also found that

Michael O. showed a significant number of difficulties with activities of daily living and

exhibited several vegetative symptoms. *Id.* at 802.

In October 2019, Dr. Andrew Pleshkevich, another psychologist, conducted a

psychological evaluation of Michael O. following his referral by the Bureau of Disability

Determination. *Id.* at 1242. Dr. Pleshkevich administered a standardized test of cognitive abilities

and found that Michael O. scored in the low average classification for three of the four indices,

namely perceptual reasoning, working memory, and processing speed. *Id.* at 1244. He scored in

the average classification for verbal comprehension. *Id.*

Based on the results of the examination, Dr. Pleshkevich determined that his cognitive

functions did not suggest an inability to understand and carry out instructions in the workplace.

*Id.* at 1247. Upon completion of a personality test, Dr. Pleshkevich noted that the results

"suggest[] a person who is reporting significant distress, with particular concerns about his

physical functioning. [Michael O.] sees his life as severely disrupted by a variety of physical

problems." *Id.* at 1246. Dr. Pleshkevich found that "[b]oth the pattern of responses on the personality test and the information from the interview were consistent in suggesting that [Michael O.'s] physical decline has taken a psychological toll and that he suffers from significant depression." *Id.* at 1246–47.

### B. Procedural History

On September 22, 2016, Michael O. protectively filed applications for Title II Social Security DIB and Title XVI SSI. Tr. at 118, 130.

In both applications, he alleged disability due to annular tear and disc degeneration beginning November 13, 2015. *Id.* These claims were initially denied on March 16, 2017, and again upon reconsideration on June 26, 2017. *Id.* at 142–43, 171–72.

Michael O. then filed a written request for hearing on August 10, 2017, and the hearing was held on April 17, 2018. *Id.* at 82–117.

On April 27, 2018, ALJ Alexander Borre issued an unfavorable decision, *id.* at 173–194, which Michael O. appealed.

On October 4, 2019, the Appeals Council vacated ALJ Borre's decision and remanded with instructions to further evaluate plaintiff's mental impairments, reassess plaintiff's residual functional capacity, and obtain further evidence. *Id.* at 196–198.

Following the remand, Michael O. attended a telephonic hearing before ALJ John Molleur, *id.* at 40–80, who issued an unfavorable decision on July 1, 2020, *id.* at 7–34.

On March 26, 2021, the Appeals Council denied review of ALJ Molleur's decision. *Id.* at 1–3.

Micheal O. then filed suit in this Court, and while the appeal in this Court was pending, he filed another application for disability benefits. *Id.* at 2297–306. On March 14, 2022, United

States District Court Judge Omar A. Williams issued an order remanding this case back to the Agency upon consent agreement of the parties. *Id.* at 1957.

On May 17, 2022, the Appeals Council vacated and remanded ALJ Molleur's decision, directing him to consolidate Michael O.'s 2016 and 2021 claims, to evaluate the treating and non-treating source opinions according to the treating physician rule, and to obtain a new vocational assessment that reconciled Michael O.'s limitations with the availability of jobs as described in the *Dictionary of Occupational Titles* and its companion publication, the *Selected Characteristics of Occupations*. *Id.* at 1962–64.

On July 6, 2023, Michael O. testified at another hearing before ALJ Molleur, *id.* at 1851–91, and on August 28, 2023, ALJ Molleur issued an unfavorable decision, *id.* at 1819–50.

In his August 28, 2023 decision, ALJ Molleur found that Michael O. met the insured status requirements of the Social Security Act through December 31, 2020, and that he had not been engaged in substantial gainful activity since November 13, 2015. *Id.* at 1825. ALJ Molleur also found that Michael O. had degenerative disc disease of the lumbar spine status post decompression, anxiety disorder, ADHD, PTSD, and MDD. *Id.* Nonetheless, ALJ Molleur concluded that Michael O. had the residual functional capacity to perform light work and was therefore not disabled. *Id.* at 1827–34.

On September 8, 2023, Michael O. filed written exceptions to the Appeals Council, *id.* at 2178, which declined to review his claim, *id.* at 1810–11, thereby making ALJ Molleur's August 28, 2023 decision the final decision of the Commissioner.

This appeal followed.

On July 26, 2024, the Commissioner filed a motion for entry of judgment under sentence four of 42 U.S.C. § 405(g) requesting this Court to enter judgment reversing and remanding this

case to the Commissioner for further proceedings so that an ALJ may reevaluate the medical

opinion evidence and Michael O.'s RFC. Def.'s Mem. at 1.

On August 30, 2024, Michael O. responded, and moved for this Court to enter judgment

directing a finding of disability and remanding for the sole purpose of calculating benefits due.

Pl.'s Mem. at 3–4.

## II.    STANDARD OF REVIEW

Under section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), a district court

reviewing a final decision of the Commissioner of Social Security "is performing an appellate

function." *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981). A district court reviewing a

disability determination "must determine whether the Commissioner's conclusions 'are supported

by substantial evidence in the record as a whole or are based on an erroneous legal

standard.'" *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quoting *Beauvoir v. Chater*, 104

F.3d 1432, 1433 (2d Cir. 1997)). The court may not make a *de novo* determination of whether a

plaintiff is disabled in reviewing a denial of disability benefits. *Wagner v. Sec'y of Health &

Hum. Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the court's function is to ascertain

whether the Commissioner applied the correct legal principles in reaching his/her conclusion,

and whether the decision is supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983,

985 (2d Cir. 1987).

"Substantial evidence is 'more than a mere scintilla.'" *Brault v. Soc. Sec. Admin.,

Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012) (per curiam) (quoting *Moran v. Astrue*, 569 F.3d 108,

112 (2d Cir. 2009)). "It means such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Moran*, 569 F.3d at 112. It is a "very deferential standard of

review—even more so than the 'clearly erroneous' standard." *Brault*, 683 F.3d at 448 (citing

*Dickinson v. Zurko*, 527 U.S. 150, 153 (1999)). To determine "whether the agency's findings are supported by substantial evidence, 'the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)).

A court has the power "to enter, upon the pleadings and transcript of record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see Shalala v. Schaefer*, 509 U.S. 292, 297 (1993). The court may remand to the agency for further proceedings in cases where the Commissioner "has failed to provide a full and fair hearing, to make explicit findings, or to have correctly appl[ied] the law and regulations." *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991); *see Rosa v. Callahan*, 168 F.3d 72, 82–83 (2d Cir. 1999).

Reversals for the sole purpose of calculating benefits are only permitted where the present record shows persuasive proof of disability such that a remand for further proceedings would serve no useful purpose. *Williams v. Apfel*, 204 F.3d 48, 50 (2d Cir. 1999) (permitting an award of benefits where "the records provided persuasive evidence of total disability that rendered any further proceedings pointless").

### III.    DISCUSSION

#### A.  Eligibility for SSI Benefits

The Social Security Act establishes that benefits are payable to individuals who have a disability. 42 U.S.C. § 423(a)(1). "The term 'disability' means . . . [an] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . ." *Id.* § 423(d)(1)(A).  In order to determine whether a claimant is disabled

within the meaning of the SSA, the ALJ must follow a five-step evaluation process as promulgated by the Commissioner.

First, the ALJ must determine whether the claimant is engaged in substantial gainful activity. *Id.* § 404.1520(b); *see also Id.* § 423(d)(2)(A) (stating that in order to be considered disabled, an individual's impairment must be "of such severity that he is not only unable to do his previous work but cannot . . . engage in any other kind of substantial gainful work which exists in the national economy," and "'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country").[6]

If they are not engaged in such activity, the ALJ must proceed to Step Two to determine whether the claimant has a severe medically determinable impairment or combination of impairments. *Id.* § 404.1520(c). An impairment will be considered severe if it significantly limits a claimant's ability to perform "basic work activities." *Id.*

If the claimant has a medically determinable severe impairment, the ALJ proceeds to Step Three to determine whether any identified severe impairment meets or medically equals those identified in Appendix 1. *Id.* § 404.1520(d). These impairments are *per se* disabling, assuming a claimant meets the duration requirement. *Id.*

If the claimant's impairments are not *per se* disabling, then the ALJ proceeds to Step Four, which entails assessing the claimant's residual functional capacity, or their ability to work in light of their limitations. *Id.* §§ 404.1520(a)(4)(iv), 404.1520(e), 404.1545(a)(1).

---

[6] The determination of whether such work exists in the national economy is made without regard to: 1) "whether such work exists in the immediate area in which [the claimant] lives;" 2) "whether a specific job vacancy exists for [the claimant];" or 3) "whether [the claimant] would be hired if he applied for work." 20 C.F.R. § 416.920(a)(4)(i)—(v).

At Step Five, the ALJ must establish whether the claimant's residual functional capacity will allow the performance of any past relevant work. If the claimant is unable to perform past relevant work, the ALJ bears the burden of proving that, accounting for the claimant's age, education, work experience, and residual functional capacity, the claimant can perform other work that exists in significant numbers in the national economy. *Id.* § 404.1520(g)(1). If the ALJ proves all of that, then the claimant is not disabled. *Id.*

The claimant bears the burden of proving the requirements of Steps One through Four, after which the burden shifts to the Agency to prove that the claimant is capable of working. *Carroll v. Sec'y of Health & Hum. Servs.*, 705 F.2d 638, 642 (2d Cir. 1983) ("The burden is on the claimant to prove that he is disabled within the meaning of the Act. However, if the claimant shows that his impairment renders him unable to perform his past work, the burden then shifts to the Secretary to show there is other gainful work in the national economy which the claimant could perform.") (citations omitted).

### B.  The Underlying ALJ Decision

Because this case should be remanded back to the Commissioner, as both sides concede, there is just one issue to decide: whether this case should be reversed and remanded for further administrative proceedings or for the award and calculation of benefits.

An ALJ's "[f]ailure to apply the correct legal standards is grounds for reversal." *Pollard v. Halter,* 377 F.3d 183, 189 (2d Cir. 2004) (citation modified). Legal error includes failure to adhere to the applicable regulations. *See Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Generally, legal error requires remand to the agency. *See Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) ("Such an error ordinarily requires remand to the ALJ for consideration of the improperly excluded evidence . . . ."); *see also Shalala v. Schaefer*, 509 U.S. 292, 310 (1993)

13

(Stevens, J., concurring) ("[A] court's order to remand a case pursuant to sentence four of § 405(g) necessarily means that the Secretary has committed legal error."). But rather than remand for further agency review, a court may reverse and enter judgment for the claimant "when the record provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose." *Parker v. Harris,* 626 F.2d 225, 235 (2d Cir. 1980). The relevant inquiry is whether there is "persuasive proof of disability" in the record, such that "further evidentiary proceedings would serve no purpose." *Id.*

The Commissioner argues that a remand for further agency review is appropriate because the most recent ALJ relied on an earlier ALJ's weighing of certain medical opinions, despite reaching different conclusions than that earlier ALJ regarding Michael O.'s mental and physical abilities, so he must provide additional explanation of how the RFC accounts for the medical opinions of Dr. Barbara Phillips, Dr. Michael Robbins, and psychologist Charles Vassilopoulos. Def.'s Mem. at 3.

Michael O. argues that the most recent ALJ committed compounding errors, which, if corrected, would conclusively establish his disability. First, he argues that the ALJ did not properly apply the treating physician rule, and because the rule was not applied, and because the ALJ failed to consider the full record, the ALJ made an RFC determination that was not supported by substantial evidence. Pl.'s Mem. at 3–9. Second, he argues that a proper RFC determination would establish that he cannot perform any job that is available in the job market. *Id.* at 12.

The Court discusses each in turn.

i.  <u>The Treating Physician Rule</u>

A treating physician is an "acceptable medical source who provides [the claimant], or has provided [the claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." 20 C.F.R. § 404.1527(a)(2). For claims submitted before March 27, 2017, in determining whether a claimant is disabled, the Commissioner is required to give more weight to the medical opinion of the claimant's treating physician, so long as the requirements of the regulation are met, commonly referred to as the "treating physician rule." *Id.*

Under this rule, a treating physician's opinion about a claimant's impairment is entitled to "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in [the] case record." *Id.* § 404.1527(d)(2); *see also Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993) (upholding these regulations). The Commissioner must set forth "good reasons" for failing to give the opinions of a treating physician controlling weight. *See, e.g.*, *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004) ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physicians [sic] opinion and we will continue remanding when we encounter opinions from ALJ's [sic] that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion.").

If the ALJ determines that a treating physician's opinion is not entitled to controlling weight, it must determine how much weight to give it. In doing so, it must "explicitly consider" several factors: "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (citing 20 C.F.R. § 404.1527(c)(2)).

Failure to apply this rule properly constitutes legal error. *See Hilsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp. 2d 330, 344 n.4 (E.D.N.Y. 2010) ("Failure to satisfy the treating physician rule constitutes legal error . . . .").

Because Michael O.'s application was submitted before March 17, 2017, the Commissioner must apply the treating physician rule in 20 C.F.R. § 404.1527 to his claim. *See* Tr. at 118 (stating that Plaintiff filed his initial claim for disability on September 22, 2016). Dr. Barbara Phillips, M.D., is Michael O.'s treating physician. She has been his primary care physician since 2007 and has regularly treated him for his lower back pain since its onset. *Id.* at 763. Several of Dr. Phillips's medical opinions, beginning in 2016 and most recently in 2022, can be found in the record. *Id.* at 763, 915, 1025, 1114, 2968.

In his 2023 decision, the ALJ did not accord Dr Phillips's medical opinion controlling weight. *Id.* at 1831–32 (stating that Dr. Phillips's medical opinion was given "little" or "some" weight). The ALJ addressed Dr. Phillips's medical opinion three separate times. First, he stated broadly that he "agrees with the analysis of Barbara Phillips. . . in [ALJ Borre's] April 27, 2018 decision[.]" *Id.* at 1831. Next, he gave "little weight" to a letter from Dr. Phillips which "describe[d] a level of functional limitation not consistent with the medical evidence describing his activities." *Id.* Finally, he gave "some weight" to Dr. Phillips's October 2022 questionnaire stating that Michael O.'s concentration would be impaired during more than 25 percent of the workday because of his back pain. *Id.* at 1832. ALJ Molleur acknowledged that Dr. Phillips's opinion was supported by evidence in the record, but concluded that Dr. Phillips's observations were "more severe than is consistent with the overall record[.]" *Id.*

But the ALJ erred in relying on the earlier ALJ's 2018 analysis. And, in 2019, the Appeals Council vacated that earlier ALJ's decision, in part, because while Dr. Phillips's

opinions "consistently contain the diagnosis of depression and anxiety with the claimant's depression noted to be caused by chronic pain[,]" ALJ Borre gave little weight to the opinion of Dr. Charles A. Vassilopoulos, despite it being "the only evidence in file that contains objective and clinical findings" regarding Michael O.'s mental status." *Id.* at 196. The Appeals Council also found that the ALJ failed to properly account for testimony from Michael O.'s mother alleging that he faced significant difficulty bending, sitting, changing positions, standing for more than five to ten minutes at a time, and climbing stairs. *Id.* at 197. The remand instructed the ALJ to reassess his maximum residual functional capacity, provide rationale with specific references to evidence of record, and explain the weight given to such evidence. *Id.* at 197–98.

Despite these clear instructions from the Appeals Council, when the ALJ issued his first ruling in 2020, he did not conduct a *de novo* review and once more relied on the earlier ALJ's analysis, which the Appeals Council had already deemed insufficient. *Id.* at 21. In 2022, the Appeals Council vacated the ALJ's 2020 decision in part because "the hearing decision does not provide adequate rationale for rejecting the opinion of treating source Barbara Phillips, M.D." *Id.* at 1963. The Appeals Council elaborated that

> "[t]he decision discredited Dr. Phillips' suggestion that the claimant was incapable of performing sedentary work primarily due to statements the claimant made indicating that he can use a shower chair while showering and is able to drive on occasion. Nevertheless, these examples do not adequately support the claimant's ability to perform sedentary work on a regular and continuing basis." *Id.* at 1963.

In his 2023 ruling, the ALJ made no effort to correct these mistakes, and once more relied on the earlier ALJ's analysis. *Id.* at 1819. The ALJ did discuss two of Dr. Phillips's observations but did not set forth "good reasons," *Halloran*, 362 F.3d at 33, for why he did not give them

17

controlling weight, only stating that her observations were not consistent with the record.[7] His failure to set forth "good reasons" also ignored the Appeals Council's order to provide specific rationale for rejecting Dr. Phillips's medical opinion. *See* 20 C.F.R. § 416.1477(b) (requiring an ALJ considering a matter on remand to "take any action that is ordered by the Appeals Council"); *see also Scott v. Barnhart*, 592 F. Supp. 2d 360, 371 (W.D.N.Y. 2009) (stating that an "ALJ's failure to comply with the Appeals Council's order constitutes legal error, and necessitates a remand"). Even if the ALJ had successfully described why Dr. Phillips's opinions were inconsistent with the record, he still failed to "explicitly consider" the various *Burgess* factors when assigning "little" weight to Dr. Phillips's opinion. *Halloran*, 362 F.3d at 33.

Accordingly, because of his failure to substantively apply the treating physician rule, the ALJ committed reversible legal error.

## ii. Application of the Treating Physician Rule

Having decided that the ALJ committed legal error in not applying the treating physician rule, the Court now must decide whether the proper legal application of the rule in this case requires remand in order for the Commissioner to "comprehensively set forth [its] reasons," *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019) (alteration in original), or whether "the record provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose," *Parker,* 626 F.2d at 235, and judgment may be entered for the claimant and the case remanded for the sole purpose of calculating benefits. *Id.*

---

[7] The other medical opinions that the ALJ consulted, and their corresponding weights, are as follows: The opinions of State DDS psychiatrists Christopher Leveille, Ph.D. and Jerrold Goodman, Ph.D. were given little weight; the opinion of Andrew Pleshkevich, Ph.D. was given some weight; the opinion of Peter Lucchio, Psy.D. was given little weight; the opinion of Dr. Sekhar was given little weight; and the opinion of Barbara Phillips, M.D. was given some weight. The opinion of Robin Bansal, APRN was not afforded a particular weight, but was "fully considered" when determining the above residual functional capacity. Tr. at 1830–32. The ALJ also relied on the earlier ALJ's analysis of the opinions of Barbara Phillips, M.D., which he assigned partial weight; Michael Robbins, D.O., which he assigned some weight; and Charles Vassilopoulos, Ph.D., which he assigned little weight. *Id.* at 185.

Persuasive proof of disability exists when there is "no apparent basis to conclude" that additional evidence "might support the Commissioner's decision." *Rosa*, 168 F.3d at 83; *see also Ronald V. v. O'Malley*, Civ No. 3:22-1513 (VAB), 2024 WL 1341119 (D. Conn. Mar. 29, 2024) ("[T]here is no need for a remand to determine whether the change of physical work requirement from light to sedentary, based on the inclusion of testimony from [the state agency consultants], would change the analysis. The vocational expert already testified about what would happen if [the claimant] were in the sedentary work category: there would be no jobs for him.").

The Commissioner argues that the record evidence from Doctors McElhinney and Greenberg, who "opined that [Michael O.] was capable of the full range of light work," Def.'s Mem. at 5, Dr. Pleshkevich's opinions about Michael O. lacking impairment in some respects and "only moderate impairment" in others, *id.*, as well as Micheal O.'s own "treatment notes," *id.*, all "undermine an assertion that the record contains persuasive proof of disability," *id.* at 6.

In response, Michael O. argues that, if Dr. Phillips's opinion is given the controlling weight it is due, then his RFC would reflect that he is unable to perform even sedentary work, thereby eliminating any gainful employment that exists in the national economy.

The Court agrees.

In deciding whether the record contains "persuasive proof of disability," the Court first must determine whether, as a matter of law, Dr. Phillips's opinion was due controlling weight under the treating physician rule. To have controlling weight, Dr. Phillips's opinion must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). The clinical and laboratory diagnostic techniques Dr. Phillips used in rendering her medical opinion, which included physical examinations, *see, e.g.*, Tr. at 1749–50,

CT scans and MRIs, *see, e.g.*, *id.* at 888–94, and the medical reports of specialists to whom Michael O. was referred are medically acceptable.

Her medical opinions have consistently reported lower back pain affecting Michael O.'s ability to concentrate, accomplish tasks, sit, stand, walk, and lift objects. She also consistently notes mental health impairments of depression and anxiety resulting from and contributing to his pain. She has opined that Michael O.'s pain ranges from a three or four to a ten out of ten as exacerbated by movement, *id.* at 917, and that self-management of this pain "consumes his attention," *id.* at 918. His pain impairs his ability to focus on activities or tasks, and because of this, daily life tasks take him longer than the average person to complete. *Id.* at 764–66.

She also opined that Michael O. cannot walk more than one city block, sit up for 20 minutes, or stand for 10 to 15 minutes before needing rest. *Id.* at 918. She estimated that he would only be able to sit for one hour, stand for one hour, and walk for two hours in an eight-hour workday. *Id.* at 1050. His legs must be elevated at a 40-degree angle when sitting, and he is rarely able to lift less than ten pounds. *Id.* at 919.

Dr. Phillips's opinion regarding Michael O.'s physical and mental symptoms is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. It is therefore due controlling weight under the treating physician rule.

### 1. *Physical impairments*

Substantial evidence in the record supports Dr. Phillips's findings regarding Michael O.'s physical impairments. In December 2014 and January 2015, orthopedic physician Pietro Memmo, M.D., observed that Michael O. experienced low back pain that "may be faced mediated or due to a disk [sic] herniation or annular tear." Tr. at 676. He noted that Michael O.'s

"lumbosacral paraspinals are tender to deep palpation" and that "[h]e has premature degeneration for a gentleman his age." *Id.* at 674.

Based on Dr. Memmo's recommendation, on April 4, 2015, Michael O. saw Dr. James Yue, M.D., who reviewed MRI scans of his back and found "a relatively well maintained lumbar spinal anatomy" with a "very small annular disruption at L4-5, but really no significant lumbar disc issues that [he could] identify." *Id.* at 725. Overall, Dr. Yue found that "the patient's degree of back pain does not necessarily complement his MRI findings." *Id.*

Dr. Yue referred Michael O. to Dr. Michael Robbins, D.O., who upon initial examination observed low back pain ranging from a two to an eight out of ten that was exacerbated by sitting, *id.* at 721, but otherwise generally agreed with Dr. Yue, *id.* at 724. When Dr. Robbins saw Michael O. again in August 2016, however, he stated that "[u]nfortunately, [Michael O.] had very large annular tears," *id.* at 716, and advised that he "should only consider sedentary employment," *id.* Dr. Robbins then operated on Michael O. to treat his lumbar spondylosis, lumbar disc degeneration, and annular tears. *Id.* at 689. Dr. Robbins also opined that Michael O. could lift more than 10 pounds and should avoid frequent bending, twisting, or turning. *Id.* at 185.

In March 2017, Michael O. saw Dr. Patrick Senatus, M.D., for a discogram of his back. *Id.* at 811. During the examination, Dr. Senatus reviewed the discography and observed that the discogram "demonstrates 10/10 concordant pain from L2-S1." *Id.* In February 2018, Michael O. saw physiatrist Dr. Subramani Seetharama, M.D. *Id.* at 1019–24. Dr. Seetharama noted that Michael O. had been previously diagnosed with a pars fracture and upon examination observed difficulty with balance and gait, back pain and limb pain, and increased anxiety. *Id.* at 1021. He was unable to tandem walk, heel walk, or toe walk. *Id.* at 1022.

In July 2022, Michael O. saw Dr. Rajat Sekhar, M.D., a pain medicine physician. Dr. Sekhar observed pain with extension of the lumbar spine, pain with palpation of the axial back muscles bilaterally, and positive straight leg raises bilaterally. *Id.* at 3059. Upon examination of MRI and CT scans of Michael O.'s back, Dr. Sekhar noted "MRI findings of modic type 1 changes at the L3 and L4 levels and signs and symptoms consistent with vertebrogenic pain." *Id.* at 3061.

Then, in January 2023, Michael O. was examined by APRN Robin Bansal who noted lumbar tenderness, bilateral paraspinal tenderness in the lumbar area, a positive straight leg raise for the right leg, decreased motor function in the right knee and ankle, and decreased range of motion in the lumbar spine. *Id.* at 3042. Like Dr. Seetharama, APRN Bansal observed that Michael O. was unstable while walking. *Id.* at 3043. She also noted that he "was able to squat but not all the way down" and that he had "minimal knee bend." *Id.* Michael O. "used pain avoidance techniques consistent with lower back pain throughout the entire exam." *Id.*

In February 2023, Dr. Sekhar completed a medical opinion questionnaire rating Michael O.'s lower back pain as moderate to severe affecting his activities of daily living and maintenance of social functioning.[8] *Id.* at 3079. In June 2023, Dr. Sekhar ordered MRIs of Michael O.'s back, and the reviewing doctor observed worsening of his condition as contrasted with X-rays and MRIs in 2020 and 2021. The 2023 MRI revealed that his lumbar spondylosis was similar to what was observed in his 2021 MRIs, but that his endplate changes had worsened. *Id.* at 3240. The scans also showed abnormal growth or damage within his bones that "may reflect bone infarcts or atypical hemangioma," disc bulges, and bone spurs causing "severe"

---

[8] The ALJ gave Dr. Sekhar's opinion from the questionnaire "little weight" because it was "not supported by any noted examination performed by Dr. Sekhar and appears to be based on the claimant's subjective reports of severe back pain." Tr. at 1832. Dr. Sekhar personally examined the patient and reviewed scans of his spine eight months prior to rendering his February 2023 medical opinion. *Id.* at 3058–62.

compression of his spinal nerves "with at least encroachment of the right extraforaminal L5 nerve root." *Id.* The imaging of Michael O.'s back and the accompanying medical assessment are consistent with the physical symptoms of pain reported by Michael O. and considered by Dr. Phillips in her various medical opinions.

State DDS physicians James McElhinney, M.D., and Michael Greenberg, M.D., present medical opinions different from that of Dr. Phillips. In September 2021, Dr. McElhinney opined that Michael O. could occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds. *Id.* at 1974. He also opined that Michael O. could stand or walk for about six hours in an eight-hour workday and sit for about six hours in an eight-hour workday. *Id.* Dr. McElhinney concluded that "allegations of total disability [were] not supported by objective evidence in [the] file." *Id.* Michael O. requested a reconsideration of Dr. McElhinney's conclusion, and less than six months later in December 2021, Dr. Greenberg affirmed the initial disability determination. *Id.* at 1978–84. The ALJ determined that these reports undermined the significant limitations that Dr. Phillips identified.

But the ALJ's reliance on these physicians' opinions was error. Doctors McElhinney and Greenberg are both consulting physicians who each saw Michael O. only once and within three months of one another. Significantly, after their respective medical examinations, Michael O.'s back pain persisted, and he continued to be treated by Dr. Phillips and examined by other professionals as noted in the record.

Thus, while arguably conflicting, reliance on the one-time opinions of these two consulting physicians is especially inappropriate where the treating physician's findings are consistent with the other medical opinions in the record, as is the case here. *See Rucker v. Kijakazi*, 48 F.4th 86, 94 (2d Cir. 2022) ("We have repeatedly 'cautioned that ALJs should not

rely heavily on the findings of consultative physicians after a single examination.'") (quoting *Selian v. Astrue*, 708 F.3d 409, 419 (2d Cir. 2013)); *see also Schillo v, Kijakazi*, 31 F.4th 64, 78 n.5 (2d Cir. 2022) ("[I]t can be problematic when an ALJ affords [the findings of a consultative physician] more weight than a treating physician's findings."); *see also Estrella*, 925 F.3d at 98 ("[A] one-time snapshot of a claimant's status may not be indicative of her longitudinal mental health.").

Additionally, the record suggests that both doctors rendered their opinions based only on a review of Michael O.'s medical records rather than a personal examination of him. Neither doctor's evaluations indicate a physical examination of Michael O. using medically accepted techniques that were employed by other professionals in diagnosing and treating Michael O., such as straight leg raises, gait observations, or palpations. In his 2023 decision, the ALJ gave little weight to the opinions of many professionals because they were "not supported by any noted examination" and "appear[ed] to be based on the claimant's subjective reports of severe back pain." Tr. at 1831–32.

But, inexplicably, i.e., without "good reasons," the ALJ considered the opinions of Doctors McElhinney and Greenberg, also rendered without physical examinations, to be considered substantial enough to undercut the opinion of Michael O.'s treating physician. Indeed, rather than differently diagnose Michael O., Doctors McElhinney and Greenberg differ with Dr. Phillips as to the severity of his pain. As to that aspect of Michael O.'s physical limitations, for "the nature and severity of a claimant's impairments, '[t]he SSA recognizes a rule of deference to the medical views of a physician who is engaged in the primary treatment of a claimant.'" *Dolcetti v. Berryhill*, No. 3:17-CV-1820 (VAB), 2019 WL 2402951, at *8 (D. Conn. June 7, 2019) (alteration in original) (quoting *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir.

2015)); *see also Burgess*, 537 F.3d at 128 (same). As a result, because Dr. Phillips consistently treated Michael O., she had a longer view and more extensive understanding of his condition and, on this record, in a far better position to assess the severity of his symptoms.

Accordingly, given that Dr Phillips's medical opinions regarding Michael O.'s physical impairments are consistent with other substantial medical evidence in the record, her opinion must be given controlling weight under the treating physician rule as a matter of law.

### 2. *Mental Impairments*

Michael O. has been diagnosed with anxiety disorder, ADHD, PTSD, and MDD. Tr. at 1825. Dr. Phillips has opined that Michael O.'s anxiety contributed to the severity of his pain experience, and that his depression was caused by his chronic pain, but that his mental impairments were not the primary cause of his disability. *Id.* at 1050. Rather, Michael O.'s pain reduces his ability to concentrate and focus, thereby interfering with his ability to complete an eight-hour workday. *Id.* at 764–66. Dr. Phillips's opinion regarding the effects of his pain is consistent with other substantial evidence in the record.

In February 2017, the Connecticut Bureau of Disability Determination referred Michael O. to Dr. Vassilopoulos for examination of his mental impairments. Dr. Vassilopoulos found that Michael O. had inattention and distractibility, showed a number of vegetative symptoms, had difficulty with orientation to location, and showed mild neurological dysfunction with respect to immediate memory. *Id.* at 802–04. He found that Michael O. showed a significant number of difficulties with activities of daily living like showering, which he only did twice weekly. *Id.* at 802. Nonetheless, Dr. Vassilopoulos found that Michael O. could perform simple repetitive commands in a work environment. *Id.* at 804.

In December 2019, Dr. Pleshkevich noted that Michael O. was able to care for himself "with effort" but that it is "time consuming; he reported that taking a shower takes him an hour." *Id.* at 1243. Dr. Pleshkevich found that Michael O. suffers from significant depression but concluded that Michael O. "would likely demonstrate no impairment in the ability to understand and carry out instructions due to being cognitively intact." *Id.* at 1247. Both Dr. Vassilopoulos and Dr. Pleshkevich found that Michael O.'s cognitive abilities did not preclude his ability to perform simple tasks. They both acknowledged, however, that the effects of Michael O.'s physical symptoms of pain have significant effects on his daily functioning.

Michael O. also saw Peter Lucchio, Psy.D., who opined that due to his back pain, he had difficulty concentrating, resulting in frequent failure to complete tasks in a timely manner. *Id.* at 2641–42. As the ALJ noted, however, Dr. Lucchio rendered his opinion based on claimant's subjective reports of pain rather than personal examination of his symptoms. It was not error for the ALJ to give little weight to his opinion, as is consistent with 20 C.F.R. § 404.1527(c)(1).

And, as to the opinions of Dr. Vassilopoulos and Dr. Pleshkevich—once again—rather than differently diagnose Michael O., they differ with Dr. Phillips as to the severity of his pain. And again, as to that aspect of Michael O.'s physical limitations, "the nature and severity of a claimant's impairments, '[t]he SSA recognizes a rule of deference to the medical views of a physician who is engaged in the primary treatment of a claimant.'" *Dolcetti*, 2019 WL 2402951, at *8 (citation and internal quotation marks omitted).

Accordingly, because Dr. Phillips's medical opinion regarding the mental impairments resulting from Michael O.'s back pain is consistent with the other substantial evidence in the record, her opinion must be given controlling weight under the treating physician rule.

iii.    The Residual Functional Capacity Determination

In order to establish persuasive proof of disability, there must be "no apparent basis to conclude" that additional evidence "might support the Commissioner's decision." *Rosa*, 168 F.3d at 83. Additionally, Michael O. must be able to establish his disability based on the record as it currently exists. *See, e.g.*, *Ronald V.*, 2024 WL 1341119, at *5 ("The vocational expert already testified about what would happen if [the claimant] were in the sedentary work category; there would be no jobs for him. Thus, [the claimant] could not work, and would be deemed disabled under the Social Security's own regulations . . . .") (citations omitted).

The Commissioner argues that remand is necessary to, *inter alia*, "further evaluate [Michael O.'s] RFC, if necessary further evaluate [Michael O.'s] ability to perform jobs that exist in significant numbers in the national economy, and issue a new decision." Def.'s Mem. at 4.

Michael O. argues that if Dr. Phillips's opinion were given controlling weight, then the physical and mental limitations she identified would preclude him from performing any substantial gainful employment available in the national economy. Pl. Mem. at 11–12.

The Court agrees.

Vocational expert testimony from the July 2023 hearing and evidence in the record conclusively establish Michael O.'s inability to engage in gainful employment. *See* Tr. at 1851–91. Without the limitations identified by Dr. Phillips, ALJ Molleur determined that Michael O.

"has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can occasionally climb ladders, ropes, and scaffolds; can frequently climb ramps and stairs; can frequently balance, stoop, and kneel; can occasionally crouch and crawl; and can have no exposure to power tools or other vibrations. The claimant can understand, remember, and carry out simple and detailed (but not complex) instructions and tasks and can tolerate no more than occasional decision making or changes in the work setting."
*Id.* at 1827–28.

27

Light work requires "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). But, giving "controlling weight" to Dr. Phillips's opinion, as it must on this record, Michael O. is unable to satisfy the lifting and carrying requirements of light work. *See* Tr. at 919 (stating that Michael O. should rarely lift 10 pounds). Michael O. also cannot sit for extended periods of time, and therefore, is unable to satisfy the sitting requirements of sedentary work. *See id.* at 1050 (stating that Michael O. could only sit and stand for one hour each and walk for two hours in an eight-hour workday).

Moreover, on this record, an individual who required unscheduled breaks of sixty to ninety minutes each day, over and above scheduled breaks, could not perform any work in the national economy. *Id.* at 1885 (the testimony of the vocational expert). Any off-task time "above 10 percent cannot be tolerated in competitive employment," and employer tolerance for absenteeism is one day per month. *Id.* at 1885–86. And Dr. Phillips has opined that Michael O. would be off task for 25 percent of the day and that he would be absent from work at least five days a month. *Id.* at 2974, 920.

Accordingly, on this record, given the limitations identified by Dr. Phillips whose opinion is entitled to controlling weight, Michael O. would be unable to complete any job available in the national economy, rendering him disabled.

### C.  Scope of Remand

 "Where application of the correct legal standard could lead to only one conclusion, we need not remand." *Schaal*, 134 F.3d at 504; *see also Parker*, 626 F.2d at 235 ("[W]e have reversed and ordered that benefits be paid when the record provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose."). Instead, "when the record provides persuasive proof of disability and a remand for further evidentiary

proceedings would serve no purpose," a court may enter judgment for the claimant and remand for the sole purpose of calculating benefits. *Parker*, 626 F.2d at 235; *see, e.g.*, *Morris v. Berryhill*, 313 F. Supp. 3d 435, 441 (W.D.N.Y. 2018) ("As such, additional proceedings would serve no proper purpose, and remand for the calculation and payment of benefits is warranted."); *see also Torres v. Colvin*, No. 3:16-cv-809 (JAM), 2017 WL 1734020, at *3 (D. Conn. May 3, 2017) (collecting cases remanding for calculation of benefits only where Commissioner fails to meet Step Five burden).

　Persuasive proof of disability exists when there is "no apparent basis to conclude" that additional evidence "might support the Commissioner's decision." *Rosa*, 168 F.3d at 83; *see also Ronald V.*, 2024 WL 1341119 (remanding for calculation of benefits where no additional vocational testimony was needed to establish Plaintiff's disability).

Remand for calculation only is especially appropriate where "a claim has previously been remanded and the Commissioner has been afforded multiple opportunities to carry his burden." *Steven C. v. Comm'r of Soc. Sec.*, 592 F. Supp. 3d 132, 141 (W.D.N.Y. 2022); *see also Steficek v. Barnhart*, 462 F. Supp. 2d 415, 421 (W.D.N.Y. 2006) (finding that the case should be remanded for calculation and payment of benefits where "[t]he Commissioner has already had one opportunity to correct the errors that occurred in connection with the first hearing, and has failed to do so; in fact, the ALJ committed the exact same errors the second time around").[9]

---

[9] Although not dispositive to the outcome of this case, Michael O. first submitted his claim in 2016. He has not worked since then, and has endured a hearing, a denial, a vacatur from the Appeals Council, another hearing, another denial, an appeal to the district court, a remand, and a subsequent third denial. The agency has had nine years and numerous chances to carry its burden at the fifth step of the evaluation process, yet it has repeatedly failed to apply the treating physician rule to Michael O.'s claim, even despite the Appeals Council's instructions to do so. *See Torres*, 2017 WL 1734020, at *4 ("Plaintiff's claim has been pending for more than seven years and was already remanded by the District Court once before. I am not persuaded that the Commissioner deserves a third opportunity to carry her burden."); *Ardito v. Barnhart*, No. 3:04-cv-1633 (MRK), 2006 WL 1662890, at *5–6 (D. Conn. May 25, 2006) ("Given the substantial time that has elapsed since the period in question concluded, and the endless iterations this case has already endured, the Court declines to remand the case to Defendant for reconsideration of Mr. Ardito's claims.").

Here, with the proper application of the treating physician rule, as a matter of law, and the subsequent determination of the residual functional capacity at Step Five, based on that proper application of the treating physician rule, only one outcome in this case is possible: the "record is clear that if the opinion of plaintiff's treating physician controls, there are no jobs in the national economy that plaintiff can perform." *Morris*, 313 F. Supp. 3d at 441.

Accordingly, this case will be remanded solely for the purpose of calculating benefits.

## IV.    CONCLUSION

For the reasons explained above, Michael O.'s motion is **GRANTED**. The Commissioner's motion is **DENIED**.

The Commissioner's Decision is **VACATED** and **REMANDED** for the calculation and payment of benefits.

The Clerk of the Court is respectfully directed to enter judgment for Plaintiff, remand this case to the Commissioner for calculation and payment of benefits, and to close this case.

**SO ORDERED** at New Haven, Connecticut, this 29th day of September, 2025.


/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE